A96A1135. SMITH et al. v. TURNER.

(477 SE2d 663)

ANDREWS, Judge.

The central issue in this appeal is whether the wills executed by Marcus Smith and Inez Smith were mutual wills under OCGA § 53-2-51. The trial court determined they were not mutual wills and granted summary judgment to Turner. We affirm.

On January 23, 1991, Marcus Smith and his wife of 45 years, Inez Smith, both executed wills in the presence of each other and two witnesses. Marcus' will provided in pertinent part: "I give, bequeath and devise to my wife Inez Ellison Jackson Smith, all my property both real and personal in fee simple. In the event my wife named herein does not survive me, I give, bequeath and devise all my property both real and personal, in fee simple to any child or children that survive me, share and share alike."

Inez Smith's will provided: "I give, bequeath and devise to my husband Marcus A. Smith, all my property both real and personal in fee simple. In the event my husband named herein does not survive me, I give, bequeath, and devise all my property both real and personal, in fee simple, to any child or children of my husband that sur-

vive me, share and share alike."[1]

Marcus Smith died on August 11, 1991. Donald Turner, his executor, filed a petition to probate on August 19, 1991. On October 2, 1991, Gary and Philip Smith, two of Marcus' sons, filed a caveat to Marcus' will, alleging the will was invalid due to lack of capacity, fraud, mistake, and undue influence. Subsequently, on October 7, 1991, Inez Smith executed a new will in which she left $50,000 to the animal shelter, some land for a pet cemetery to be maintained for 40 years after her death, and the remainder of her estate to Donald Turner, her executor.

After a hearing on the caveat to Marcus' will, the court ruled in favor of the propounder and admitted the will to probate. Gary and Philip Smith appealed, but later dropped the appeal and filed the instant lawsuit with another brother, Maurice, through his guardian and sister, Betty Jackson. In this lawsuit, they alleged Marcus' will *was* valid, that he and Inez Smith executed mutual wills, and requested specific performance of the contract between Inez Smith and their father.

1. OCGA § 53-2-51 provides, in pertinent part: "(b) Except for mutual wills based on express contract, no wills shall be or shall be construed to be mutual wills unless there is contained in both wills an express statement that the wills are mutual wills."

In interpreting this statute, the Georgia Supreme Court held that "[t]he purpose of this provision (Ga. L. 1967, p. 719) was to eliminate the uncertainty that had crept into the law through the practice of courts, on an *ad hoc* basis, of finding wills to be 'mutual' by *implication*." (Footnote omitted; emphasis in original.) *Coker v. Mosley*, 259 Ga. 781 (387 SE2d 135) (1990).

Here, there is no express statement in the wills that the wills are mutual wills. The question then becomes whether there is any evidence of an express contract to make or to refrain from revoking a will. See id.

"An express contract is an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing." Black's Law Dictionary, p. 323 (6th ed. 1990).

Appellants argue the existence of an express agreement by claiming that both Marcus and Inez told Marcus' children that Marcus was leaving everything to Inez, who would then leave everything to Marcus' children. They also point out Inez Smith's deposition testimony as follows: "Q. What I really want to ask you about is: Did you and Mr. Smith agree that you would — that he would leave things to

---

[1] Inez Smith was Marcus' second wife and had no children of her own.

his children[2] and that you would leave things to his children? A. Right. That was perfectly agreeable. Q. And you had no problem with that? A. No problem whatever, because I thought that's the way it should be if they had behaved themselves."

Inez Smith explained this remark later in her deposition in response to a question as to why she changed her will. "The main reason is because my husband told me if any of his children contested his will, he said, you've got a will of your own; you change that will and cut them off without a penny. Now that's the main reason I did it."

"A contract upon which specific performance is sought must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it." (Citations and punctuation omitted.) *Wilson v. Nichols*, 253 Ga. 84, 85 (316 SE2d 752) (1984). Here, there is no evidence which rises to the level necessary to find an express contract between Inez and Marcus Smith to make mutual wills. Although the testimony of Marcus' children would seem to imply an agreement, the Georgia Supreme Court has expressly disapproved of finding wills to be mutual by implication. Further, there is Inez Smith's deposition testimony which tends to show the wills were *not* intended to be mutual and that Marcus expressly approved the revocation of Inez's will if his children should contest his will.

Accordingly, we find no evidence of an express contract to make mutual wills. Therefore, the trial court did not err in granting summary judgment on this issue.

2. We do not address the remaining enumerations of error as appellants have acknowledged the remaining claims are based upon their standing as legatees under mutual wills.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 29, 1996.

*Hoke J. Thomas, Jr., Ivan A. Millender*, for appellants.
*Kirby & Roberts, Louis J. Kirby*, for appellee.

---

[2] This question appears to be misleading. Marcus Smith left his property to his children in the event Inez did not survive him.